(C. D. 1345)

COUGHLIN MFG. CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 13, 1951)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

*Eugene R. Pickrell* as *amicus curiae*.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: The merchandise involved in these protests is cellophane sheets assessed for duty at 40 cents per pound under the provisions of paragraph 31 (b) (1), Tariff Act of 1930. It is claimed properly dutiable at 45 per centum ad valorem under the provisions of paragraph 31 (c) of the same act.

Paragraph 31 (b) (1), under which these sheets were assessed for duty, provides, so far as is pertinent to this issue, for "All compounds of cellulose * * *":

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, * * * not made into finished or partly finished articles * * *.

Paragraph 31 (c) under which importer claims the merchandise is properly dutiable provides for—

Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness, made by any artificial process from cellulose, * * * by solidification into sheets, bands, or strips, * * *.

No oral testimony was introduced, the case being submitted on a stipulation between counsel through which it was agreed that the merchandise as imported consisted of cellophane sheets over 1 inch in width and not over three one-thousandths of 1 inch in thickness, made by an artificial process from cellulose hydrate by solidification into sheets which were thereafter cut into the widths represented by the imported sheets by knives set at predetermined positions on the rewinding machine.

Briefly stated, the position of the plaintiff is that the imported sheets cut from the larger sheets are nonetheless cellophane in sheets specifically provided for in paragraph 31 (c). The position of the Government (defendant) is that while the wider sheets, from which the imported sheets were cut, were made by a solidification process, the narrower sheets, as imported, are not dutiable under paragraph 31 (c) as cellophane sheets made by solidification into sheets.

The provision for cellophane in sheets, bands, and strips first appeared in the Tariff Act of 1930 as paragraph 31 (c). The predecessor paragraph in the 1922 act (paragraph 31) provided, insofar as is pertinent to the present issue, for "Compounds of pyroxylin * * * or of cellulose, by whatever name known * * * in * * * sheets * * * or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem * * *."

In the Tariff Act of 1930, paragraph 31 was broken up into subparagraphs 31 (a) (1) and (2); 31 (b) (1) and (2); and 31 (c). Paragraph 31 (a) (1) and (2) provides for cellulose acetate and combinations or mixtures thereof. Paragraph 31 (b) (1) covers compounds of cellulose, not made into finished or partly finished articles, at 40 cents per pound. Paragraph 31 (b) (2) covers the same merchandise, if made into finished or partly finished articles, on which the rate is 50 per centum ad valorem (as amended by the trade agreement with the United Kingdom, T. D. 49753), whereas paragraph 31 (c), as hereinabove referred to, covers cellophane in sheets, bands, and strips, at 45 per centum ad valorem.

By changing the language of paragraph 31 of the Tariff Act of 1922 and making specific provision under paragraph 31 (c) of the Tariff Act of 1930 for cellophane in sheets, bands, and strips, the Congress expressed a clear intent to provide the stated ad valorem rate of duty

on cellophane and to exclude cellophane sheets from the provisions of paragraph 31 (b) (1) for compounds of cellulose in sheets at the pound rate of duty. It will be presumed that Congress did not use this language found in paragraph 31 (c) without meaning.

It is apparent from the agreement reached by counsel that if this merchandise were imported in the original sheets which were made the full width of the machine on which they were produced by the manufacturing process known as solidification, there would be no question but that they were properly dutiable under the provisions of paragraph 31 (c). It is the defendant's position in support of the collector's classification that because these wide sheets were slit into narrow widths as they came off the machine, this manipulation took the material out of the *eo nomine* provision for cellophane sheets in paragraph 31 (c) and made it subject to the provisions of paragraph 31 (b) (1), as assessed by the collector.

We do not agree with this position taken by the defendant. In the condition in which imported, the merchandise before us consists of "Sheets * * * (* * * known as cellophane * * *), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness * * *," as provided in paragraph 31 (c). While the Congress concludes this paragraph by using the words "by solidification into sheets, bands, or strips," we do not believe that Congress meant to include only sheets, bands, and strips which in widths imported were solidified in the first instance on the machine into such widths. Such a construction would be hypertechnical and would result in a commercial absurdity. It would mean that a wide sheet of cellophane would pay one rate of duty whereas that same sheet, if trimmed or cut into any other widths, would take a different rate of duty. In other words, the same product would, because of this slitting process, have its condition changed for tariff purposes. This we do not believe was intended by Congress in preparing the present paragraph 31 of the Tariff Act of 1930. Where a literal or hypertechnical interpretation of the statute would produce a result contrary to the apparent legislative intent, then the strict letter of the statute must yield to the intent of Congress. *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C. C. P. A. 415, T. D. 45578.

There was before Congress at the date of the passage of the 1930 act, a decision of this court in *Du Pont Cellophane Co. (Inc.)* v. *United States*, 55 Treas. Dec. 327, T. D. 43232. At pages 328 and 329 of that decision, there appears a stipulation describing the method of manufacturing cellophane, which we may assume was similar to the merchandise here before us. The merchandise was described as follows, page 329:

(j) *The resulting product.*—After passing through the squeezing and heated rollers the film comes off the end of the machine in a roll about 36 inches in width

and approximately 5,000 feet long * * *. *This continuous film is later cut into smaller sheets or other forms according to the trade requirements.* [Italics supplied.]

It seems clear that by paragraph 31 (c), Congress unquestionably contemplated just such merchandise as is here before us. There is no claim that these sheets, as imported, are articles as was the case in *Birn & Wachenheim* v. *Du Pont Cellophane Co.* (*Inc.*), 17 C. C. P. A. 122, T. D. 43454, where the Court of Customs and Patent Appeals, in considering an appeal from a decision of this court, stated (p. 127):

* * * True enough, sheets of cellulose are articles but they are specially mentioned as sheets and it seems clear that such sheets, unless made into articles, can not be classifiable under the second bracket of the paragraph.

The court was there referring to that portion of paragraph 31 of the Tariff Act of 1922 that provided for a different rate of duty where the compounds of pyroxylin were made into "finished or partly finished articles."

We find, therefore, that the imported cellophane sheets cut from wider sheets which were produced by solidification are properly dutiable, as claimed, under paragraph 31 (c) of the Tariff Act of 1930. The classification of the collector is therefore overruled and the claim of the plaintiff that the imported merchandise is dutiable at 45 per centum ad valorem under paragraph 31 (c) of the Tariff Act of 1930, as "Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness, * * * by solidification into sheets, bands, or strips," is sustained.

Judgment will issue accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I am constrained to dissent from the reasoning and conclusion of the majority in this case. The defendant contends that paragraph 31 (c) of the Tariff Act of 1930, under which plaintiff claims, covers imported sheets, bands, and strips which were made into such sheets, bands, and strips by a process of solidification only, and does not cover sheets, bands, and strips which were made into sheets, bands, and strips by a cutting or slitting process. The majority has held that the construction contended for by the defendant is "hypertechnical and would result in a commercial absurdity."

In paragraph 31 (c), Congress described not only by physical dimensions but by the materials used and method of manufacture the products upon which the rate of duty therein provided for was to be levied. No evidence was offered by the parties in this case as to the processes of manufacture of sheets, bands, and strips of cellophane. There is nothing to show that at the time of the enactment

of the provision it was necessary to the production of such sheets, bands, and strips to trim or cut the same. Nor is there anything to show that sheets, bands, and strips of cellophane were not at that time made into such sheets, bands, and strips by solidification only and without further trimming or .cutting. I do not believe that the facts of the commercial production of cellophane sheets, bands, and strips are so commonly known that we may take judicial notice of them. In this situation, I am unable to say that to limit the provision to its exact words would result in a commercial absurdity or be hypertechnical.

It may be that Congress intended the very situation envisioned by the majority, i. e.—

* * * that a wide sheet of cellophane would pay one rate of duty whereas that same sheet, if trimmed or cut into any other widths, would take a different rate of duty.

I see nothing on its face hypertechnical or commercially absurd about that. Certainly, the trimming or cutting is a further process beyond the process described in the tariff provision, and I do not believe that the legislative intent to apply the rates provided for in paragraph 31 (c) to anything other than that which is described therein is apparent either from the language of the provision itself or from the legislative history set forth in the briefs of counsel for the plaintiff and of *amicus curiae*. The legislative history as thus set out does not reveal anything at all about trimming or cutting.

I believe that the record is insufficient upon which a judgment can be rendered in favor of the plaintiff's claim.